The next case of Moral Argument is Wiley v. Minnesota Lawyers Mutual. Good morning, Your Honors. May it please the Court, Counsel? My name is Theresa Young, and I'm here today representing Minnesota Lawyers Mutual. In this case, Bruce Wiley, the attorney who's brought this action, and his law firm are seeking coverage from MLM for a breach of contract action, sorry, for a breach of fiduciary duty action that was brought against them by the underlying plaintiff, Boyd Schluter. Mr. Schluter engaged Mr. Wiley's other business, Idea Catalyst, to secure a $25 million letter of credit that he intended to use to purchase property here in Missouri, and claims that when that deal fell through, that while the contractor required that he deposit $500,000 in the Willie O'Brien IULTA account, that Mr. Wiley didn't return that money when the deal fell through. So that's the underpinnings of the case. Here, there's no coverage under the policy for that circumstance. I'm going to first direct the Court to the business enterprise exclusion that is in the policy. That is the main exclusion that MLM relied on in denying coverage for this claim. Under that exclusion, there are three requirements that have to be met for the exclusion to apply. The first of those requirements is that the claim arise out of professional services rendered by the insured. Here, I don't think that there's any dispute from the parties that, in fact, the underlying claim, the breach of fiduciary duty claim against Mr. Wiley for the improper distribution of funds, falls within the parameters of professional services. There is some disagreement as to whether those professional services were escrow services or actual straight legal services other than escrow services. But I think that that first element, everybody is in agreement with. The second element is that the claim has to arise in connection with a business enterprise that was either owned, controlled, or managed by any insured. Again, I think it's undisputed that this claim actually was in connection with Mr. Wiley's other business, Idea Catalyst. That's where the contract to procure that $25 million credit was. And it was under that contract that the money was deposited in the Wiley O'Brien IOLTA account. And so, again, I think that that brings us to the third requirement. And the third requirement is that there be a conflict of interest between any insured and with any client or former client, or with the interest of any person claiming an interest in the same or related business enterprise. So, under that one, we allege that, in fact, there is such a conflict of interest. In fact, that that conflict of interest is the premise of the underlying lawsuit. It's the sole basis for the underlying lawsuit is that Mr. Schluter claims that Mr. Wiley had a conflict of interest in both representing Idea Catalyst under the contract, as well as representing Mr. Schluter when he accepted the funds and then failed to disperse the funds. And so, this really, I think, is a textbook application of a business enterprise exclusion. We, in our briefs, gave you a couple of exemplar cases. And, really, the purpose of these exclusions are to eliminate a situation where an attorney is intermingling his business with another business that he, again, owns, manages, controls, in such a way that the insurance company ultimately isn't accepting simply risk for the lawyer in working for his law firm, but ends up accepting risk for the work the attorney is doing in those other businesses as well, which is exactly what happened here. Mr. Wiley signed the contract, actually, as Vice President of Idea Catalyst. And, here, Wiley isn't looking to Idea Catalyst to cover the damages in this case. Instead, he's looking to the lawyer's professional liability policy that was secured by Wiley O'Brien and under which he is insured as one of Wiley O'Brien's attorneys. Also, the exclusions can, in fact, prevent a collusive lawsuit where an underlying plaintiff sues the attorney, and then they turn, again, to the policy that was issued to the law firm instead of that outside company to look for the funds to cover what otherwise would be a business risk. So, again, we think that that's what happened here. Mr. Wiley was wearing two hats at the time that he signed that contract, accepted the money, and then improperly dispersed the money rather than returning it to Mr. Schluter. Counsel, this business enterprise exclusion, the language it applies to conflicts of interest with the clients, former clients, and persons claiming an interest in the business enterprise. And, of course, your client does not fall under either of those exceptions, does it? My client? Yes. As in Missouri Lawyer General? Well, not your client, but Schluter. Well, in fact, we believe that it does. I mean, we believe that he does. We believe that Mr. Schluter was the client of Mr. Wiley. And there's a couple of things that I would say that goes to that. Number one is I would say look at the underlying petition. In the underlying petition, Mr. Schluter clearly argues that there is a fiduciary duty that was breached. You can't get to a fiduciary duty absent a relationship. So there was clearly a relationship there. Now, what the counsel in this current action has argued is that the relationship was actually an escrow agent. So it was an escrow exchange only as to Mr. Wiley and Mr. Schluter. Well, if that is the case, again, he's a client. That is a client. It is his escrow client. It would be the first thing I would say to that. In fact, in the appellee brief, there is a recognition that an escrow agent is the agent for all of the fiduciaries. They have a fiduciary duty to everybody involved in the escrow agreement. So, again, I think that points to the fact that this was a client of Mr. Wiley. This isn't an uninterested person in this exchange. Mr. Schluter was involved in the business enterprise and received escrow services. So if you have a duty, that equates to being a client? Well, a fiduciary duty. Again, it has to be premised on a special relationship. And here, the only way that you get a special relationship is by Mr. Schluter being a client of Mr. Wiley's. And so that would be one of the things I would say. The other thing that I would say is that alternatively to that, even if we were to get to the place where Mr. Schluter was not, in fact, a client of Mr. Wiley's, there's still a further way under that exclusion that you can get to Mr. Schluter's involvement, which is if he had an interest in the business enterprise. Now, there are courts that have looked at this and have, in fact, found that the business enterprise that we're talking about here could be defined as, in fact, the deal that was being constructed under this contract. Again, here, Mr. Schluter is not an uninterested third party to this enterprise. He had a financial interest in the enterprise that was being undertaken. Finally, what I would say is that even if you get to the place where none of those applies, the only way that the business risk exclusion does not apply is if Mr. Wiley was providing no services to Mr. Schluter. If that is the case, then you have to look at the policy as a whole. Because if Mr. Schluter was getting no services from Mr. Wiley, then this lawyer's liability policy simply doesn't apply in the first instance. With counsel, would Mr. Schluter apply under the language of others? Does the policy not define legal services as including but not limited to escrow agent and includes claims for services rendered to others? Not necessarily just clients, but former clients? I'm sorry, so are you referencing back to the exclusion or to the insuring agreement? The insuring agreement. Okay. And so, Mr. Schluter would qualify as others? So, in other words, if you're providing a service, number one, I would say a professional service does encompass the engagement as a lawyer. It's a legal engagement if you look at the definition of professional services. So, we can't lose that in the bigger picture here. But at the end of the day, the insuring agreement allows for claims that result from rendering or failure to render professional services to others. That to others is meaning other than themselves. So, in other words, the idea is that if an attorney is representing themselves in their own interests, that that, in fact, isn't something that would be covered by the policy. That's not a risk that MLM is undertaking. Again, because that would be a risk that would be outside of the boundaries of the normal practice that he would be engaged in. And so, Mr. Schluter would be part of those others. So, if he was providing professional services to Mr. Schluter, then, again, I think if he's providing professional services to Mr. Schluter, Mr. Schluter is a client. If Mr. Schluter is a client, the exclusion applies. And so, it's one of those, you can't have Mr. Schluter be a client for purposes or be provided professional services in order to get him within the coverage of the policy, but then say that the exclusion doesn't apply because, in fact, he's not a client of his. The exclusion, though, doesn't use the word others, does it? Does it not? The policy itself defines others as being part of the claims for such services rendered to others. But then when we get to the exclusion, we'll see the term others used. No. No, I mean, I would agree that, I mean, again, but if you're talking about, you know, what professional services, so in other words, if it fits within the definition of professional services such that the insuring agreement would apply, then at that point, throughout the policy, he should be considered as having obtained professional services from Mr. Willey. The only way that you end up with no coverage in this case is if you change the definition of professional services once you get into the exclusion. And so, that for the purposes of the insuring agreement, he provided professional services to others, meaning Mr. Schluter. But then when you get into the exclusion, you say, in fact, he didn't provide professional services to Mr. Schluter because he was never a client of his. And again, you have to remember that the provision of professional services would be, and again, it would cover escrow services. Those are specifically included in the definition of professional services. But it would still be those escrow services while he was engaged in the private practice of law. While engaged in the private practice of law is included as part of the definition of professional services. And so, again, if you meet that initial bar in order for there to be coverage, potentially coverage under the policy, under the insuring agreement, and the definition of professional services, when you get to the exclusion, that definition of Mr. Schluter as his client still applies, such that the exclusion applies. I don't know if I made that more clear or less clear. Okay, thank you. And so, I guess, again, I would wrap it back to what we were just talking about, and then just add in, I guess, that the definition of being insured here is that, and there was some discussion in this, you know, in the briefs, and so I just wanted to touch on it to clarify it, that, in fact, Mr. Willie was only considered an insured while he was working for Willie O'Brien. And I think the appellee, you know, took that to mean that we were saying that it was only when he actually represented Willie O'Brien. That's not the case. We are applying really a plain meaning of the policy that I think every lawyer knows, that their policy doesn't apply if they were to go and provide legal services for another law firm. If I were to, you know, rather than working for Brown and James today, if I stopped by Brian Cave and did some work for them, my Brown and James policy wouldn't apply to me. And so that's what we're talking about in this case also, is that on the day that the contract was engaged, that required this money to be put in the IALT account when the scheme was actually set up, that Mr. Willie was actually working for Idea Catalyst. He signed the contract for Idea Catalyst, and, you know, he was working on behalf of Idea Catalyst, not on behalf of Willie O'Brien. Now, the last argument that I want to touch on from the Appleese brief is that they have argued the idea of what if, in fact, Mr. Willie were performing legal services for Idea Catalyst and was just the escrow agent of Idea Catalyst. Again, I think that that is talking out of both sides of the mouth, because they do agree that when you're an escrow agent, you are the agent of everybody to the agreement. But if we were to set that aside for purposes of the business enterprise exclusion and look at that question, would it be okay that if they were doing work for Idea Catalyst, could Mr. Willie then get coverage for claims that were brought by Mr. Schluter? And number one, again, I would say look to the petition. I mean, that's what Iowa law tells us. Here, the policy is construed under Iowa law, and Iowa law says you look to the petition first. You look at what the plaintiffs pled. Here, the plaintiffs pled that there was a fiduciary relationship between them, that he used his position as an attorney to get him to deposit this money in the account and then didn't pay it out. And so I would say, number one, look to the petition. And number two, I would say look to the case law. We provided you a couple, again, of exemplar cases, and what those cases look at is this idea of where does the claim have to arise. And what they found is the claim has to actually arise out of the – so in other words, the underlying plaintiff's claim has to arise out of the legal work that was being done. And so, again, what I would say is that here, the claim, Mr. Schluter's claim that the funds were not properly returned to him didn't arise out of Mr. Willie providing legal services to Idea Catalyst. There's no claim by Idea Catalyst that he did anything wrong, and therefore they're liable to Mr. Schluter. This isn't a case where they're trying to get a liability around that way. What they're trying to do is actually cut out Mr. Schluter entirely from the transaction. And if that is the case, there's simply no legal malpractice claim here because there is no claim by Idea Catalyst. And so instead, when you look at the reality and the practical situation, it's that, in fact, the claims from Mr. Schluter flowed from the failure to disperse those funds, the failure to return the funds to him when the deal fell apart here. And so if you look at if he had no relationship, again, it leads back to the fact that under the insuring agreement, that there would be no coverage. And then the last thing that I'll touch on, and I'm going to touch on this just briefly, because I'm not sure that there's even a disagreement between counsel and I. I'm just raising it to preserve it. And that's that there is a claim by Willie O'Brien as well, a claim against Mr. Schluter, as to the law firm itself. We argued in the trial court that if there's no coverage for Mr. Willie, in fact, there's no coverage for his law firm either. That goes back to the fact that the exclusion references any insured, if the work is done for another company that any insured is in control of, then the exclusion applies. And, again, I would say that the other language is all tied to the firm as well. The trial court just never reached this issue because they decided against us, and so they didn't have to reach to the next level to determine the law firm. So absent any other questions, that's what I have to say this morning. I don't believe so. Thank you. Thank you. Counsel? Thank you, Your Honor. May it please the Court, counsel? Your Honors, I represent Bruce Willie and Willie O'Brien Law Firm as the appellee in this matter. I don't believe there's any question, and I agree with the opposing counsel, that a claim was timely filed and that MLN denied coverage and defense and did not have a reservation of rights and go forward with this. Judge McGlynn is handling actually both matters, the Schluter matter and the declaratory judgment that's before you. In a motion for summary judgment, which is part of the legal file on the Schluter matter, Judge McGlynn found that there was a fiduciary duty by Willie and that the facts under whether he breached that fiduciary duty is what needs to be explored at the next level in the still pending case. Approximately eight months later, we had this motion for summary judgment, and Judge McGlynn went on to say that basically that Judge Willie is not the attorney or does not have an attorney relationship with Mr. Schluter. However, he did have a fiduciary relationship under an escrow agreement, and that is a covered event under the professional services definition, and the exclusion does not apply. This Court was inquiring as to whether or not Schluter had an interest or under the exclusion had an interest or controlled directly or managed this idea catalyst. The answer, of course, is no. No evidence was ever put forward providing that to be the fact. Secondly, whether there was a conflict of interest. I submit to this Court that Judge McGlynn's finding that there was no conflict of interest because there was no attorney-client relationship is what's applicable to this Court. We provided the Court cases in our brief in regards to what Iowa's definition is to what an attorney-client relationship is. One is, of course, by express contract. That's not applicable to this set of facts. The second is whether or not in attempting to establish an attorney-client relationship, the following elements must be proven. One, a person sought advice or assistance from an attorney. Two, the advice or assistance sought pertained to matters within the attorney's professional competence. And finally, the attorney expressly or impliedly agreed to give or actually gave the desired advice. That never occurred. There was no attorney-client relationship. The allegations in the brief that Mr. Schluter thought Mr. Willie was his attorney was never proven and actually was disproven. The only allegation contained in the petition, and I quote to the legal file 267, paragraph 3, is that Willie used his position as an attorney to gain the trust of the plaintiff. The depositions and all the evidence that was presented to Judge McGlynn was that Mr. Schluter assumed by the fact that Mr. Willie was an attorney that the money would be put in a trust account and not dispersed. That is the thrust of the case that's still pending in front of Judge McGlynn. Did Bruce Willie and his firm have authority to disperse this money or on this fee and was the fee earned? That's the last matters to go before the court. The coverage under this policy is clear that professional services are defined and that an escrow agent is one of the professional services defined. We have coverage. Now then we go to the exclusion. Again, without reiterating what I said earlier, Mr. Schluter was not a client, not a former client, and had no interest in Idea Catalyst. Willie was under contract to Idea Catalyst, and Willie was operating under the control of Idea Catalyst in regards to what to do with the escrow money. Now the fiduciary duty extends beyond that, and that is Willie breached his fiduciary duty to Schluter by taking the money and not getting permission to disperse it. That's an issue that's not left to be litigated. One of the things counsel said in an earlier argument was that Mr. Schluter had an interest in this or was interested in this. There's a difference between having an interest in an enterprise and being interested in it. Mr. Schluter had no interest in Idea Catalyst. He only had a contract with them to have services provided. I wanted to, in our brief, we touched briefly on this, but if we follow the theory of MLM, there's a number of absurd results that would occur. An attorney, while engaged in the private practice of law, acts as an escrow agent. Does that form an attorney-client relationship? The answer is no. If it did, it would basically take out any coverage for any person unless you were their client. The same applies for the other lists of services that are listed. The mediator arbitrator is another covered event. The absurdity of a mediator having to have an attorney-client relationship with one of the participants in what he's trying to mediate would be an absurd result and would basically bar coverage for any of the covered professional services that MLM puts on its document. The cases that were cited by the counsel as instructive in the brief from Pennsylvania and the other location are not actually on point. In those cases, it's very clear that the attorney operated with two hats. He was not only a participant in the scheme, or he was also representing the parties involved. This is completely different from the facts before this court. I leave this court with the thought that if MLM wanted to be clear in that their relationships had to be defined a certain way, they would have put it in the contract. This is a contract written by attorneys for attorneys. A very easy way to clarify that would be to specifically say it. Trying to sit here today and, as Judge McGlynn did, and try to figure out what they meant makes this an ambiguous policy. The objective test is that it's decided in favor of the insured. With that, Your Honors, I ask that you affirm Judge McGlynn's decision. Are there any questions? I don't believe so, thank you. Thank you. Counsel? Okay, Your Honors, that was a whirlwind. I'm going to try to cover the bases here. The first thing that I heard my opposing counsel say was that the court found that there was a fiduciary duty to Mr. Schluter as an escrow agent. Again, what I would like to bring this back to is just a plain language, common sense look at this policy. If Mr. Schluter is a client of Mr. Willey's, the business enterprise exclusion applies. Because their only argument as to why the business enterprise exclusion does not apply is that, in fact, he's not a client of Mr. Willey's. If he had a fiduciary duty to him as his escrow agent, then Mr. Schluter was his client. I just think it really is that simple. Again, I think that when he says, in fact, he wasn't a client because he was never an attorney, this is an argument that we've gone back and forth on throughout the pleading of this case. Again, I would say if they're going to stand firm and they're going to say that the activities that Mr. Willey engaged in, he did not engage in, while engaged in the private practice of law, there's no coverage. I'm not saying that every time that you have an escrow agreement, then you automatically become an attorney for each of those participants in the escrow agreement, each of the people. But what I would say is they are your clients. In other words, MLM would not provide coverage if Mr. Willey opened up a business that was an escrow business that he operated separately from Willey O'Brien and went out and engaged escrow agreements. It just wouldn't cover that. And under their reading of this policy, it would. That attorneys could go out, they could have a side business, and they could use the firm's IELTS account for that side business, and in doing so link it back to the insurance policy that their firm procured. And what I would say is that, again, that's falling directly in the realm of what these business enterprise exclusions are intended to cover. I mean, these really are intended to limit the exposure to the insurance company as to the firm itself. I mean, because that's what they're trying to cover. They're not trying to cover the firm and its partners and any other side businesses that they happen to have. And so I think, again, you just have to go and look at this with a really plain reading of the policy and with common sense. Again, I think that Mr. Austin said that Mr. Schluter didn't have an interest in this business enterprise. In fact, I think that he had a financial interest that he is alleging went terribly wrong. In fact, he was the only person who had money at stake in this business enterprise. This was a deal. Idea Catalyst was set up to facilitate this deal, and this deal was to get Mr. Schluter a $25 million letter of credit. Mr. Schluter is the one who put the money in, and Mr. Schluter is the one who is out the money now. I don't know that you can in any way qualify that as him not having an interest in this business enterprise. As to the, again, I don't think that there are absurd results if you look at this from a common sense perspective. I also don't think that there's any way that this is an ambiguous contract. I think that any attorney understands that when their firm gives them coverage under their policy, I would not assume that Brown and James would cover it if I opened another business. That simply because I'm an attorney who opens another business doesn't mean that my firm has to cover it. If, in fact, I got drunk on the way to court today because I was nervous and ended up getting into an accident, my firm would not have to cover the punitive damages for that drunk driving incident. I mean, there are a breadth of things that your policy doesn't cover. If I'm at the grocery store and I punch somebody in the face because they irritate me, my firm's coverage doesn't provide that. The policy does provide coverage for escrow. It provides coverage for professional services, including escrow services, that are conducted while engaged in the private practice of law. And, again, I would bring you back to the only way that you could find, I mean, if you find coverage in this instance, what you would be finding is that, in fact, that he could open up an escrow agency and run that escrow agency and all of its liability under his law firm policy seamlessly. And MLM would have to cover all of them. So, with that, Your Honors, I would ask that you reverse the underlying court and ask that they enter summary judgment in our favor. Thank you, Your Honors. We appreciate the brief arguments. The counsel will take the case under advisement. We will take a short recess, and the next case will be argued in pair with Clark Glenn Clark. All rise.